# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

IN RE GRAND JURY MATTER      )      No. 1:22MC30

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on a Motion to Quash Grand Jury Subpoena (Docket Entry 1), brought pursuant to Federal Rule of Criminal Procedure 17(c) and properly filed by the subpoenaed North Carolina official under seal – along with a supporting memorandum (Docket Entry 2) and affidavit (Docket Entry 3) – under Local Rule 5.4(d)(1) (as incorporated into Local Criminal Rule 57.1) and Federal Rule of Criminal Procedure 6(e)(6).[1] For the reasons that follow, the Court will deny the instant Motion.[2]

---

[1] In an effort to balance the public's interest in disclosure of the activities of the federal courts and Federal Rule of Criminal Procedure 6(e)(6)'s mandate of grand jury secrecy, the Court has drafted this Memorandum Opinion in a manner that does not reveal the substance of matters occurring before the Grand Jury (including by refraining from naming the subpoena recipient) and has directed the Clerk to publicly docket this Memorandum Opinion.

[2] Motions to quash under Federal Rule of Criminal Procedure 17(c) constitute pretrial matters as to which a United States Magistrate Judge may enter an order. See United States v. Mayes, No. 18CR154, 2020 WL 7388440, at *2-3 (E.D. Wis. Dec. 16, 2020); United States v. Pistotnik, No. 18-10099, 2019 WL 2233310, at *2 (D. Kan. May 23, 2019); United States v. Sutherland, 143 F. Supp. 2d 609, 610-11 (W.D. Va. 2001); see also 28 U.S.C. § 636(b)(1)(A) (authorizing "magistrate judge to hear and determine any pretrial matter pending before the court, except" eight specified motions, not including motions to quash subpoenas).

INTRODUCTION

According to the instant Motion, the Grand Jury for this District issued a subpoena to a North Carolina official demanding production of certain records pertaining to the activities of her office. (See Docket Entry 1 at 1-2.) The subpoenaed North Carolina official has moved to quash that subpoena as "oppressive and unreasonable because it seeks production of [her office's] papers that are made confidential by [a North Carolina statute]." (Id. at 2; see also id. at 3-4 (arguing for adoption of federal common law privilege against disclosure of subpoenaed records based on state statute); Docket Entry 2 at 4-6 (same).) Alternatively, the instant Motion asserts that "much of the documentation sought in the subpoena is protected by federal law, and the subpoena should be quashed on that basis." (Docket Entry 1 at 4; see also id. at 4-5 ("Some of the [subpoenaed] papers . . . are tax records of [a business's] employees. Tax returns and return information are confidential and protected from disclosure under 26 U.S.C. § 6103(a)(2). . . . Additionally, many of the documents sought . . . are [] protected by the Family Educational Rights and Privacy Act ('FERPA')." (internal citation omitted)); Docket Entry 2 at 7-8 (making arguments premised on Section 6103 and FERPA).) The United States has responded (properly under seal) (Docket Entry 4) and the subpoenaed North Carolina official has replied (again properly under seal) (Docket Entry 5).

-2-

DISCUSSION

"The [federal] grand jury occupies a unique role in our criminal justice system. It is an investigatory body charged with the responsibility of determining whether or not a [federal] crime has been committed." United States v. R. Enters., Inc., 498 U.S. 292, 297 (1991); see also United States v. Sells Eng'g, Inc., 463 U.S. 418, 423 (1983) ("The [federal] grand jury has always occupied a high place as an instrument of justice in our system of criminal law – so much so that it is enshrined in the Constitution."); Branzburg v. Hayes, 408 U.S. 665, 687 (1972) ("Grand jury proceedings are constitutionally mandated for the institution of federal criminal prosecutions for capital or other serious crimes, and its constitutional prerogatives are rooted in long centuries of Anglo-American history." (internal quotation marks omitted)). "The investigative power of [a federal] grand jury is necessarily broad if its public responsibility is to be adequately discharged." Branzburg, 408 U.S. at 700; see also Sells Eng'g, 463 U.S. at 423 ("[Federal grand juries] ha[ve] always been extended extraordinary powers of investigation . . . ."). "To this end[, a federal grand jury] must call witnesses, in the manner best suited to perform its task." Branzburg, 408 U.S. at 701.³

---

³ "Although [a federal] grand jury may itself decide . . . to seek certain evidence, it depends largely on the [federal] prosecutor's office to secure the evidence . . . require[d]." (continued...)

Accordingly, "[a federal] grand jury's authority to subpoena witnesses is . . . essential to its task." Id. at 688; see also United States v. Mandujano, 425 U.S. 564, 571 (1976) (plurality) ("Indispensable to the exercise of [a federal grand jury's] power is the authority . . . to require the production of evidence."). Indeed, "[a federal] grand jury investigation is not fully carried out until <u>every available clue</u> has been run down and <u>all witnesses</u> examined in every proper way to find if a crime has been committed." Branzburg, 408 U.S. at 701 (emphasis added) (internal quotation marks omitted). As a result, "the long standing principle that the public has a right to every [person's] evidence is particularly applicable to [federal] grand jury proceedings." United States v. Calandra, 414 U.S. 338, 345 (1974) (internal quotation marks and ellipses omitted).

"Of course, [a federal] grand jury's subpoena power is not unlimited." Id. at 346. "In particular, . . . the [C]ourt may

---

³(...continued)
Sells Eng'g, 463 U.S. at 430. "The [federal] prosecutor in turn needs to know what transpires before the [federal] grand jury in order to perform h[er] own duty properly." Id.; see also United States v. Armstrong, 517 U.S. 456, 464 (1996) ("United States Attorneys retain broad discretion to enforce the Nation's criminal laws. They have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to 'take [c]are that the [l]aws be faithfully executed.'" (internal citation and some quotation marks omitted) (quoting U.S. Const., Art. II, § 3)). Federal prosecutors therefore "take[] an active part in the activities of the [federal] grand jury . . . ." Sells Eng'g, 463 U.S. at 432.

quash or modify a subpoena on motion if compliance would be 'unreasonable or oppressive.'" Id. at 346 n.4 (emphasis added) (quoting Fed. R. Crim. P. 17(c)). "This standard is not self-explanatory," R. Enters., 498 U.S. at 299; however, "[c]ourts have recognized various ways in which a [federal grand jury] subpoena may be unreasonable or oppressive under [Federal] Rule [of Criminal Procedure] 17(c)," United States v. Under Seal, 478 F.3d 581, 585 (4th Cir. 2007). For example, "[Federal] Rule [of Criminal Procedure] 17(c) offers a vehicle for a subpoenaed party to assert a constitutional, statutory, or common-law privilege." Id.

The instant Motion argues that the Court should exercise its authority under Federal Rule of Evidence 501 to recognize a federal common law privilege based on a state statute that makes the subpoenaed North Carolina official's records "confidential except in two circumstances" (Docket Entry 1 at 2 (emphasis added); see also id. at 3 (invoking Federal Rule of Evidence 501)), the first of which expressly allows said official "at [her] discretion . . . [to] ma[k]e [such records] available for inspection by duly authorized representatives of the . . . federal government who desire access to and inspection of the records in connection with some matter officially before them, including criminal investigations" (id. at 2 (internal quotation marks and emphasis omitted)), and the other of which provides for disclosure "upon an

-5-

order issued in [a specified state] Superior Court" (id. (internal quotation marks omitted)). The Court rejects that argument.

To begin, the Court agrees with the United States that the state statute in question – which, at most, offers minimal <u>confidentiality protections</u> to the records at issue – does <u>not</u> warrant recognition of a federal common law privilege under Federal Rule of Evidence 501, because said state statute "does not create any type of <u>evidentiary privilege</u>" (Docket Entry 4 at 6 (emphasis added)). See <u>Virmani v. Novant Health Inc.</u>, 259 F.3d 284, 287 n.4 (4th Cir. 2001) ("There is an important distinction between privilege and protection of documents, the former operating to shield the documents from production in the first instance, with the latter operating to preserve confidentiality when produced."); <u>Promotional Mktg. Insights, Inc. v. Affiliated Computer Servs., Inc.</u>, No. 11CV2795, 2012 WL 3292888, at *1 (D. Minn. Aug. 13, 2012) ("[T]he relevant question is not whether the documents are *confidential*; the relevant question is whether the documents are *privileged*. . . . [The defendant] has identified numerous state statutes providing that [the requested] papers are *confidential*, but [the defendant] has not contended that any of these statutes creates an evidentiary *privilege*. Indeed, a number of the statutes expressly recognize that the documents may be produced in response to a court order. Likewise, although [the defendant] offers

-6-

letters from state officials opining that the documents are confidential, these letters do not assert that the documents are privileged." (internal citations omitted) (emphasis in original)).

And, even if North Carolina law actually granted more robust, evidentiary-privilege-like treatment to the subpoenaed records, the Court would follow the overwhelming weight of federal authority and would decline to enshrine any such state law in the federal common law of privilege. See, e.g., In the Matter of the Special Apr. 1977 Grand Jury, 581 F.2d 589, 592 (7th Cir. 1978) ("[C]ourts consistently have rejected the view that state records are privileged from disclosure [to a federal grand jury], even in cases in which state law prohibited the disclosure of the records." (internal citations omitted)); In the Matter of Grand Jury Impaneled Jan. 21, 1975, 541 F.2d 373, 382 (3d Cir. 1976) ("It is not . . . a well-established principle of federal common law that records required to be filed by state law under assurances of confidentiality are privileged against use in federal grand jury proceedings. . . . [A]ny presumed privilege created by [state law] must yield here to the public's interest in [federal] law enforcement and in ensuring effective [federal] grand jury proceedings."); In re Grand Jury Investigation, Misc. No. 17-2587, 2017 WL 11140345, at *5 (D.D.C. Oct. 23, 2017) ("To frustrate compliance with a federal grand jury subpoena based on state law-afforded confidentiality protections would in effect allow states

-7-

to control federal grand jury proceedings . . . . Such a result would unduly interfere with the [federal] grand jury's investigatory function and invert the ordinary relationship of federal supremacy over state law." (internal citation and quotation marks omitted)); In re Grand Jury Proceedings, 607 F. Supp. 2d 803, 806-07 (W.D. Tex. 2009) ("[C]ourts in other circuits have rejected claims from state officials that compliance with a federal-grand-jury subpoena would mean that they would violate state confidentiality laws . . . . The [c]ourt finds the reasoning of its sister district courts persuasive. . . . [A]s a consequence of the Supremacy Clause of the United States Constitution, the [state] provisions are preempted and must give way to the federal grand jury's investigative powers."); In re Grand Jury Subpoena, 198 F. Supp. 2d 1113, 1117 (D. Alaska 2002) ("[R]ecords custodians of the [State of] Alaska . . . do not have the power or discretion to ignore a federal grand jury subpoena. . . . [T]he state confidentiality statute is trumped by a federal grand jury subpoena as a consequence of the Supremacy Clause of the United States Constitution." (internal citation omitted)); In re Grand Jury Matter, 762 F. Supp. 333, 335 (S.D. Fla. 1991) ("[W]here state nondisclosure statutes have threatened compliance with federal subpoenas, federal courts have routinely compelled compliance under the authority of the Supremacy Clause – though doing so violated the technical provisions of the state statute.").

The Court reaches the same conclusion as to the instant Motion's "alternative . . . request[]" (Docket Entry 1 at 4):

> that the [C]ourt adopt a <u>qualified privilege</u> . . . and require the [United States] to demonstrate that: "1) reasonable cause exists to believe a crime has been committed; 2) reason to believe the information is probative evidence of a matter in issue concerning the criminal act; and 3) that [sic] the same information or equally probative information cannot be obtained elsewhere through reasonable efforts."

(<u>Id.</u> (emphasis added) (quoting <u>In re Grand Jury Subpoena dated Nov. 14, 1989</u>, 728 F. Supp. 368, 374 (W.D. Pa. 1990)).) As an initial matter (in the words of a court which refused a similar request), the case on which the subpoenaed North Carolina official relies is "not binding on this [C]ourt. There is no constitutional or congressionally-created privilege in [these] records; neither the [United States] Supreme Court nor the [United States] Court of Appeals for the [Fourth] Circuit has recognized a qualified privilege in [these] records." <u>United States v. Singleton</u>, Cr. No. 11-76, 2013 WL 3196378, at *6 (E.D. Pa. June 25, 2013).

Furthermore, contrary to the terms of the qualified privilege for which the instant Motion advocates, the United States "cannot be required to justify the issuance of a [federal] grand jury subpoena by presenting evidence sufficient to establish probable cause because the very purpose of requesting the information [by subpoena] is to ascertain whether probable cause exists." <u>R. Enters.</u>, 498 U.S. at 297; <u>see also id.</u> ("[A federal] grand jury

-9-

can investigate merely on suspicion that [federal] law is being violated, or even just because it wants assurance that it is not." (internal quotation marks omitted)). Likewise (and again at odds with the proposed qualified privilege), "the existence of an alternative means of obtaining information is insufficient to render . . . subpoenaed material irrelevant to a [federal] grand jury investigation." Under Seal, 478 F.3d at 587.

Finally:

> [The subpoenaed North Carolina official's] interest in preserving the confidentiality of [her] records is more than outweighed by the necessity of thorough and complete [federal] grand jury investigations into federal crimes. Because [federal] grand jury proceedings are secret, compliance with [a federal] grand jury subpoena will by and large not defeat [state confidentiality interests], whereas noncompliance with a federal grand jury subpoena would essentially undermine the [federal] grand jury process and the Fifth Amendment.

Grand Jury Subpoena, 198 F. Supp. 2d at 1116; see also In re Grand Jury Subpoena dated Dec. 17, 1996, 148 F.3d 487, 493 (5th Cir. 1998) ("[D]ue to the secrecy of [federal] grand jury proceedings, *see* Fed. R. Crim. P. 6(e), the confidentiality of the [subpoenaed information] . . . will not be severely compromised by the disclosure of [such] information . . . to the [federal] grand jury. Of course, if the [federal] grand jury returns an indictment, such information may become public. In returning an indictment, however, a [federal] grand jury indicates that it has found probable cause to believe that a [federal] criminal offense has

-10-

occurred. . . . Thus, if an indictment is returned, any interest . . . in the confidentiality of [the subpoenaed information] will have to give way to the public interest in the administration of criminal justice."); Grand Jury Impaneled Jan. 21, 1975, 541 F.2d at 383 ("[A]ny incidental and speculative effect enforcement of the [federal grand jury] subpoena would have on voluntary compliance with the [state's information gathering activities] is outweighed by the [federal] grand jury's need for this evidence in order effectively to conduct its investigation.").

In sum, "the foregoing generic balancing of [state and federal] interests . . . favors the Government [of the United States and any more granular] case-by-case balancing is inappropriate." Grand Jury Subpoena, 198 F. Supp. 2d at 1116. More pointedly: "Case-by-case balancing of interests interjects the [C]ourt and the [subpoenaed state official] into the federal grand jury's investigative prerogatives. Inquiry into why the grand jury seeks [the subpoenaed] records will lead to further inquiry into who is being investigated for what offense. None of the foregoing is the business of the [subpoenaed state official] or this [C]ourt." Id. For all of these reasons, the Court declines to recognize a federal common law privilege (absolute or qualified) based on state confidentiality laws or interests which attach to

the records subpoenaed from the North Carolina official by the Grand Jury for this District.[4]

That disposition leaves only the instant Motion's secondary argument that, "[e]ven if the [C]ourt elects not to follow the North Carolina confidentiality protections, much of the documentation sought in the subpoena is protected by federal law, and the subpoena should be quashed on that basis." (Docket Entry 1 at 4.) As to particular federal laws allegedly implicated by the subpoena, the instant Motion first asserts in conclusory fashion that "[s]ome of the [subpoenaed] documents . . . are tax records of [a business's] employees." (Id.; see also id. ("Tax returns and return information are confidential and protected from disclosure under 26 U.S.C. § 6103(a)(2).").) As support for that (otherwise bald) assertion, the instant Motion points (without any specificity) to a contemporaneously filed affidavit from a subordinate of the subpoenaed North Carolina official. (See id. (citing Docket Entry 3, but not any page or paragraph therein).)

---

[4] That determination adheres to the United States Supreme Court's admonition that, "although [Federal] Rule [of Evidence] 501 manifests a congressional desire not to freeze the law of privilege but rather to provide the courts with flexibility to develop rules of privilege on a case-by-case basis, [courts should be] disinclined to exercise this authority expansively," University of Pa. v. Equal Emp. Opportunity Comm'n, 493 U.S. 182, 189 (1990) (internal citation and quotation marks omitted); see also Herbert v. Lando, 441 U.S. 153, 175 (1979) ("Evidentiary privileges in litigation are not favored . . . . [T]hese exceptions to the demand for every [person's] evidence are not lightly created . . . ." (internal quotation marks omitted)).

-12-

In addition, although the subpoenaed North Carolina official's supporting memorandum does give a pin cite to said affidavit for the same basic proposition (see Docket Entry 2 at 7 ("Some of the documents [subpoenaed] are tax records of [a business's] employees. *See* [Docket Entry 3], Paragraph 12.")), the cited affidavit paragraph simply echoes the undeveloped claim that "[t]his subpoena seeks . . . tax records . . . of [a business's] staff" (Docket Entry 3 at 2).[5] Such an approach to litigation will not suffice to secure relief (particularly not in this context). See Hensley on behalf of N.C. v. Price, 876 F.3d 573, 580 n.5 (4th Cir. 2017) ("[I]t is not [the court's] job to wade through the record and make arguments for either party." (internal quotation marks omitted)); Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) (Schroeder, J.) ("A [litigant] should not expect a court to do the work that it elected not to do."); see also R. Enters., 498 U.S. at 301 ("[A federal] grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance.").

---

[5] The Court's own (unassisted) review of the affidavit revealed nothing more of substance on this front. (See Docket Entry 3 at 3 (suggesting that subpoenaed documents would encompass "various analyses including but not limited to . . . tax forms and other reporting mechanisms submitted to contractors of [a business] and the Internal Revenue Service"), 5 (cryptically indicating that materials of the sort which would fall within scope of subpoena "frequently contain . . . [t]ax [r]ecords").)

-13-

Moreover, "[w]hile it is true that some [district] courts have held that § 6103(a)(2), along with 26 U.S.C. § 7213(a), reflects a public policy against disclosure of tax returns, [the subpoenaed North Carolina official has] cite[d] no case . . . which has held that th[ose] section[s] make[ all] copies of tax returns or the underlying data privileged." Heathman v. United States Dist. Ct. for the Cent. Dist. of Cal., 503 F.2d 1032, 1035 (9th Cir. 1974) (internal citation omitted); see also id. ("[D]istrict courts have held in numerous cases that tax returns are subject to discovery in appropriate circumstances."). Conversely, the United States has identified authority that Section 6103 only "protects from disclosure (except under certain circumstances) 'return information' by 'employees of the IRS [Internal Revenue Service], state employees to whom the IRS makes authorized disclosures, and private persons who obtain return information from the IRS with strings attached.' It does not forbid disclosures [of tax return information] that come from other sources." (Docket Entry 4 at 4 (internal citation omitted) (quoting and citing Hrubec v. National R.R. Passenger Corp., 49 F.3d 1269, 1270 (7th Cir. 1995)).) Given all these considerations, the Court agrees with the United States that the subpoenaed North Carolina official "cannot attempt to quash the entire subpoena by citing a statute that, at best, has limited applicability to some of the requested documents" (id.).

As a last resort, the instant Motion alleges (once more without support or development) that "many of the documents sought contain student information . . . protected by [FERPA]." (Docket Entry 1 at 5; accord Docket Entry 2 at 8.) The instant Motion further maintains that, because (A) "FERPA requires the [subpoenaed North Carolina official] to destroy any personally identifiable student data when no longer needed" (Docket Entry 1 at 5 (citing 20 U.S.C. § 1232g(b)(3))), and (B) would bar other North Carolina institutions from sharing student information with her office for five years if she "permits access to student information in violation of FERPA" (id. at 6 (citing 20 U.S.C. § 1232g(b)(4)(B))), (C) which, in turn, "would preclude [her office] from effectively complying with its statutory dut[ies]" (id.), the Court should rule "the Grand Jury [s]ubpoena herein unreasonable" (id.). This argument fails because "[Section] 1232g(b)(3) . . . provides that FERPA's confidentiality provisions . . . do not preclude access to student records necessary to enforce federal law." C.M. v. Board of Educ. of Union Cnty. Reg'l High Sch. Dist., 128 F. App'x 876, 884 (3d Cir. 2005); see also 20 U.S.C. § 1232g(b)(1)(J)(i) (allowing disclosure in response to federal grand jury subpoena).[6]

---

[6] In her reply, the subpoenaed North Carolina official argued that the federal grand jury subpoena provision cited above applies to educational institutions and not to other entities (such as her office) which receive student information from educational institutions (see Docket Entry 5 at 1); however, the reply offers
(continued...)

CONCLUSION

The Court finds no justification to adopt a federal common law privilege under Federal Rule of Evidence 501, based on either the specific state statute highlighted by the subpoenaed North Carolina official or her general interest in preserving the confidentiality of records she acquires in the performance of her official duties. Nor do the provisions of federal tax law and/or FERPA cited by the subpoenaed North Carolina official render the challenged subpoena "unreasonable or oppressive," Fed. R. Crim. P. 17(c).

**IT IS THEREFORE ORDERED** that the Motion to Quash Grand Jury Subpoena (Docket Entry 1) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall unseal this case and shall publicly docket this Memorandum Opinion, but shall maintain under seal all other filings in this case.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

December 16, 2022

---

[6](...continued)
no plausible basis to believe that North Carolina educational institutions would view FERPA as barring them from sharing information with the subpoenaed North Carolina official's office because she disclosed documents demanded by a federal grand jury subpoena, which those institutions themselves would have had to disclose if so subpoenaed. (See id. at 1-2.)

-16-